**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HANNAH ROMAINE CLECKNER, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : |
| | : Case No. 22-cv-2055-JPW |
| 3M COMPANY, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

Date: March 19, 2025

Respectfully submitted,

*/s/ Janice G. Dubler*
Janice G. Dubler
Jennifer L. Pacicco
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800 (Phone)
(215) 995-2801 (Fax)
janice.dubler@ogletree.com
jennifer.pacicco@ogletree.com
*Attorneys for Defendant 3M Company*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF UNDISPUTED FACTS.......................................................3

III.   PROCEDURAL HISTORY ...............................................................................3

IV.    STANDARD OF REVIEW..................................................................................4

V.     ARGUMENT........................................................................................................5

      A.     Summary Judgment Should be Granted on Plaintiff's Religious
            Discrimination Claims (Counts I and III) because She Cannot
            Establish a Prima Facie Case. ...........................................................5

            1.     Plaintiff Cannot Show She Holds a Sincerely Held
                 Religious Belief that Conflicted with the Vaccine
                 Requirement (Element 1 of the Prima Facie Case). ...................5

            2.     Plaintiff Did Not Inform 3M of a Sincerely Held
                 Religious Belief that Prevented Her from Getting the
                 Vaccine (Element 2 of the Prima Facie Case)..........................14

      B.     Even if Plaintiff Held a Sincerely Held Religious Belief that
            She Communicated to 3M, 3M Properly Denied Her Exemption
            Request Because It Would be An Undue Hardship to
            Accommodate Her Objection to the COVID-19 Vaccine ..................19

VI.    CONCLUSION...................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Africa v. Com. of Pa.*,
    662 F.2d 1025 (3d Cir. 1981) ...............................................................................8

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*,
    2022 WL 507479 (E.D. Pa. 2022) ..............................................................*passim*

*Beickert v. N.Y. City Dept. of Ed.*,
    2023 WL 6214236 (E.D.N.Y. Sept. 25, 2023) ...................................................23

*Blackwell v. Lehigh Valley Health Network*,
    No. 5:22-cv-03360-JMG, 2023 WL 5807840 (E.D. Pa. Sept. 7,
    2023) ....................................................................................................6, 15, 18

*Bushra v. Main Line Health, Inc.*,
    No. 23-1031, 2024 WL 1219962 (E.D. Pa. Mar. 21, 2024) .......................*passim*

*Caruano v. Bayhealth Medical Ctr.*,
    2024 WL 406438 (D. Del. Feb. 2, 2024) ......................................................8, 16

*E.E.O.C. v. GEO Group, Inc.*,
    616 F.3d 265 (3d Cir. 2010) .............................................................................20

*Ellison v. Innova Health Care Sys.*,
    No. 1:23-cv-00132, 2023 WL 6038016 (E.D. Va. Sept. 14, 2023)....................18

*Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) ..............................................................................6

*Gardner-Alfred v. Federal Reserve Bank of New York*,
    No. 22-cv-1585, 2023 WL 6214863 (S.D.N.Y. Sept. 25, 2023).......................18

*Gatto v. Johnson and Johnson Services, Inc.*,
    2025 WL 816732 (3d Cir. Mar. 14, 2025)...........................................................8

*Geerlings v. Trefyffrin/Easttown School District*,
    2021 WL 4399672 (E.D. Pa. Sept. 27, 2021).........................................8, 12, 16

*Groff v. DeJoy*,
  600 U.S. 447 (2023)..................................................................................20, 25

*Hansard v. Johns-Manville Products Corp.*,
  No. 1902, 1973 WL 129 (E.D. Tx. Feb. 16, 1973).............................................7

*Hussein v. Waldorf-Astoria*,
  134 F. Supp. 2d 591 (S.D.N.Y. 2001), *aff'd*, 2002 WL 390437 (2d
  Cir. Mar. 13, 2002) ........................................................................................7, 19

*Kennedy v. PEI-Genesis*,
  2025 WL 602159 (3d Cir. Feb. 25, 2025) .........................................................12

*Lake v. HealthAlliance Hosp. Broadway Campus*,
  2024 WL 3226273 (N.D.N.Y. June 27, 2024) ...................................................25

*Lavelle-Hayden v. Legacy Health*,
  2024 WL 3822712 (D. Or. Aug. 14, 2024) ..................................................23, 24

*Protos v. Volkswagen of America, Inc.*,
  797 F.3d 129 (3d Cir. 1986) ................................................................................6

*Reed v. Great Lakes Cos.*,
  330 F.3d 931 (7th Cir. 2003) .............................................................................15

*Robinson v. Children's Hosp. Boston*,
  No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016).......................23

*Rodrique v. Hearst Commc'ns, Inc.*,
  2024 WL 733325 (D. Mass. Feb. 22, 2024) .......................................................16

*Rolovich v. Washing State Univ.*,
  2025 WL 48361 (E.D. Wash. Jan. 6, 2025).......................................................24

*Sidelinger v. Harbor Creek Sch. Dist.*,
  2006 WL 3455073 (W.D. Pa. Nov. 29, 2006)......................................................6

*Wilkerson v. New Media Tech. Charter Sch.*,
  522 F.3d 315 (3d Cir. 2008) ........................................................................14, 15

**Other State Cases**

*Ulrich v. Lancaster Gen. Health*,
    Civ. No. 22-4945 ..................................................................................8, 16

**Federal Statutes**

Americans with Disabilities Act ...............................................................3

Civil Rights Act of 1964 Title VII............................................................3

Title VII.............................................................................................5, 6, 8

**Other State Statutes**

Pennsylvania Human Relations Act .........................................................3

PHRA .......................................................................................................5

## I.    <u>INTRODUCTION</u>

During the relevant time period, the Centers for Medicare and Medicaid Services (CMS) mandated that workers like Plaintiff be vaccinated against COVID-19 or obtain a valid religious or medical exemption ("CMS Mandate"). Plaintiff, a former Patient Support Specialist in 3M's Health Care Business Group, brings this case alleging that 3M failed to accommodate her religious beliefs by denying her request for a religious exemption to the CMS Mandate and terminating her employment for failing to obtain the vaccine. Summary judgment should be granted on Plaintiff's claim for several reasons.

First, Plaintiff cannot establish she even has a sincerely held religious belief that conflicts with the COVID-19 vaccine.

Second, even if Plaintiff held such a belief, she failed to communicate it to 3M. Plaintiff submitted to 3M an Exemption Request that was rife with inconsistencies, and clearly shows that her choice to not receive the COVID-19 vaccine was due to personal conscience, not because of any comprehensive religious teaching.

Third, summary judgment should be granted because it would have created an undue hardship for 3M to accommodate Plaintiff's request to remain unvaccinated. Plaintiff serviced almost all the hospitals in the Central Pennsylvania region, regularly coming face to face and working with vulnerable patients and healthcare

workers. She even interacted with patients in their homes. If Plaintiff remained unvaccinated, she would not only risk contracting COVID-19 in these settings, but also risk spreading it to vulnerable patients who have serious injuries or who have undergone surgery, as well as spreading it to other healthcare workers. Plaintiff's job centered around her entering healthcare facilities. Additionally, some healthcare facilities were not permitting unvaccinated vendors entry, even if they had obtained a valid exemption request. It would create a potential healthcare crisis for the vulnerable patients and a logistical nightmare for the business if 3M were required to service the territory with a Patient Support Specialist who could not enter all the facilities. Moreover, Plaintiff indicated that she would be unwilling to submit to regular nasal swabs, the primary method of testing for COVID-19, meaning that even if some facilities permitted her to enter, the risk would have been far worse of her spreading the virus, further creating an undue hardship for 3M. Finally, Plaintiff's job duties required her to enter hospitals in person. If Plaintiff was not allowed to enter a particular healthcare facility, it would cost 3M business and allow 3M's competitors, who had vaccinated employees, to gain a competitive advantage over 3M.

For these reasons, Plaintiff's Complaint should be dismissed in its entirety and judgment granted in favor of 3M.

## II.    STATEMENT OF UNDISPUTED FACTS

3M incorporates by reference its Statement of Undisputed Material Facts ("SUMF") in Support of its Motion for Summary Judgment submitted herewith.

## III.    PROCEDURAL HISTORY

Plaintiff filed her Complaint on December 27, 2022, alleged that 3M violated Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I), the Americans with Disabilities Act (Count II), and the Pennsylvania Human Relations Act ("PHRA") (Counts III and IV) by terminating her employment for failing to get the COVID-19 vaccination. ECF No. 1.  On February 12, 2024, the Court granted 3M's partial Motion to Dismiss Plaintiff's disability discrimination claims and dismissed Counts II and IV.  ECF No. 32.

As this Court is aware, 3M had to seek its assistance on five separate occasions to try to get Plaintiff to fulfill her discovery obligations.  3M's Motion for Sanctions seeking dismissal based on Plaintiff's destruction or failure to preserve highly relevant documents is currently pending.  ECF 58.[1]

3M now moves for summary judgment, seeking dismissal of all remaining claims in Plaintiff's Complaint (Counts I and III).

---

[1] If the Court grants 3M's Motion for Sanctions and dismisses Plaintiff's case, this Motion will be moot.  If the Court grants the Motion in part and orders inferences, those inferences will further support granting summary judgment here.

## IV.    STANDARD OF REVIEW

A party is entitled to summary judgment when it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bushra v. Main Line Health, Inc.*, No. 23-1031, 2024 WL 1219962, at *3 (E.D. Pa. Mar. 21, 2024) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Id.* (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Genuine issues exist when a reasonable trier of fact, viewing the record, could rationally find for the non-moving party in light of the burden of proof. *Id.* (quoting *Doe v. Abington Friends Sch.*, 389 F.3d 252, 256 (3d Cir. 2007)). "Material facts are those that could affect the outcome of the proceeding." *Id.* (internal quotation marks omitted) (quoting *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011)).

The Court must view the facts and make all inferences in the light most favorable to the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). In response to the motion, the non-moving party must show where in the record there exists a genuine dispute over a material fact. *Id.* (quoting *Abington Friends Sch.*, 480 F.3d at 256). If the "non-moving party has failed to make a sufficient showing

on an essential element of [their] case with respect to which [they have] the burden of proof," the moving party is entitled to judgment as a matter of law.  *Id.* (quoting *Celotex*, 477 U.S. at 323).

## V.    ARGUMENT

### A.    Summary Judgment Should be Granted on Plaintiff's Religious Discrimination Claims (Counts I and III) because She Cannot Establish a Prima Facie Case.

To establish a *prima facie* claim of religious discrimination under Title VII, a plaintiff must show that (1) she held a sincerely held religious belief that conflicted with the vaccine requirement; (2) she told her employer about the conflict; and (3) she was disciplined for not complying with the vaccine requirement.  *Bushra v. Main Line Health, Inc.*, No. 23-1031, 2024 WL 1219962, at *4 (E.D. Pa. 2024) (quoting *Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). The same analysis under Title VII for a claim of discrimination applies to the PHRA. *Id.* at *5 (interpreting Title VII and PHRA religious discrimination claims under the Title VII standard).

#### 1.    Plaintiff Cannot Show She Holds a Sincerely Held Religious Belief that Conflicted with the Vaccine Requirement (Element 1 of the Prima Facie Case).

Plaintiff bears the burden of demonstrating she holds a sincerely held religious objection to COVID-19 vaccination.  *See Aukamp-Corcoran v. Lancaster Gen. Hosp.*, 2022 WL 507479, at *3 (E.D. Pa. 2022) (citing *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 319 (3d Cir. 2008) and *Bushouse v. Local Union 2209,*

*UAW*, 164 F. Supp. 2d 1066, 1076 (N.D. Ind. 2001)). "[A]n employee fails to state a Title VII religious discrimination claim if the employee's beliefs are 'essentially political, sociological, or philosophical.'" *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 5807840, at *8 (E.D. Pa. Sept. 7, 2023).

Anti-vaccination beliefs themselves are not inherently religious and, therefore, are not entitled to accommodation under Title VII. *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017). Courts can analyze the sincerity of someone's religious belief in the Title VII context. *Protos v. Volkswagen of America, Inc.*, 797 F.3d 129, 137 (3d Cir. 1986) (quoting *Philbrok v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)). Moreover, "[i]f the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employer requirement." *Sidelinger v. Harbor Creek Sch. Dist.*, 2006 WL 3455073, at *11 (W.D. Pa. Nov. 29, 2006). An employer may deny a religious accommodation request if the employer has reason to believe the accommodation is not sought for religious reasons. *Aukamp-Corcoran*, 2022 WL 507479, at *4.

Courts have held that previous behavior that is inconsistent with the professed belief is evidence that the religious belief is not sincere. *See, e.g., Aukamp-*

6

*Corcoran*, 2022 WL 507479, at \*4 (questioning a plaintiff's sincerely held religious objection to the influenza vaccine when the plaintiff had received vaccinations prior to the defendant mandating it); *Hansard v. Johns-Manville Products Corp.*, No. 1902, 1973 WL 129, at \*2 (E.D. Tx. Feb. 16, 1973) (finding employee's contention that he objected to Sunday work for religious reasons undermined by his past history of Sunday work); *see also Hussein v. Waldorf-Astoria*, 134 F. Supp. 2d 591 (S.D.N.Y. 2001) (finding employer had good faith basis to doubt sincerity of employee's professed religious need to wear a beard because he had gone without a beard in the past), *aff'd*, 2002 WL 390437 (2d Cir. Mar. 13, 2002). If an employee's religious belief was only adopted a short time before requesting an accommodation, it is much more likely to be disingenuous than a long-standing religious practice. *See Aukamp-Corcoran*, 2022 WL 507479, at \*4 (citing *Hansard*, 1973 WL 129, at \*2).

Here, Plaintiff's "religious" objection to the vaccine is quite simple – God told her not to get it. SUMF ¶49(b). Plaintiff has no broad religious prohibition against being vaccinated, rather she relies on how God "moves on her heart" about a particular medical treatment. SUMF ¶77. Plaintiff testified at her deposition that "sometimes God wills [her] to take medicine or a vaccine and sometimes God wills [her] … not to." SUMF ¶78. She further states that she believes that the vaccine was "toxic," which is why God told her to abstain from it. SUMF ¶¶49(b); 87.

7

The Third Circuit and lower district Courts within the Circuit have consistently held that a general belief that a particular practice goes against "God's will" does not amount to a religious belief warranting protection by Title VII. *See Caruano v. Bayhealth Medical Ctr.*, 2024 WL 406438, at *6 (D. Del. Feb. 2, 2024) (citing *Africa v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981)) (collecting cases) ("Allowing Plaintiff the ability to object to anything that 'goes against God's will' would amount to the type of 'blanket privilege' that does not qualify as religious belief under *Africa*.").

Likewise, while Plaintiff attempts to cloak the belief that the vaccine is "toxic" as religious, it does not change the fact that it is a secular, medical belief, and not a religious one. *See Geerlings v. Trefyffrin/Easttown School District*, 2021 WL 4399672 at *1 (E.D. Pa. Sept. 27, 2021) ("Religious adherents often profess that faith inspires much of their secular lives, but those activities are still secular."); *see also Ulrich v. Lancaster Gen. Health*, Civ. No. 22-4945 (Plaintiff's "reliance upon a divine 'command … to exercise bodily autonomy,' and assertion that 'God has given [her] liberty to live according to His calling', asserts . . . a 'blanket privilege' where she alone is the arbiter for decisions which she expects her employer to 'unfailingly respect.' The [Third Circuit] specifically rejected this 'self-defining approach' to religion."); *see also Gatto v. Johnson and Johnson Services, Inc.*, 2025 WL 816732, at *3 (3d Cir. Mar. 14, 2025) (holding that plaintiff did not have a

8

sincerely held religious objections to because the belief "that the insertion of foreign matter into her body to collect her bodily fluids and report the test results violates her faith, rests largely on her view that inserting substances into her body has negative impacts.").

A review of record evidence further reveals that Plaintiff's objections to the COVID-19 vaccine and the related mandates are not religious in nature whatsoever. These views are reflected in Plaintiff's text messages, which evidence deep safety, and seemingly political, concerns about the vaccine. For instance:

- On December 23, 2020, when discussing the vaccine with a friend, Plaintiff texted, "Any thoughts on how it may affect fertility? Not sure how reliable the sources were but I read a few articles where it talked about that. *That's my only reservation*." SUMF ¶59(a) (emphasis added).

- On January 18, 2021, when texting with another friend about the vaccine, she again expressed reservations about the COVID-19 vaccine because of its supposed effects on fertility. She added to this conversation by stated, "*I guess I'll have to think about the vaccine in the near future since it'll be available to me*." SUMF ¶59(b) (emphasis added).

9

- On April 9, 2021, Plaintiff texted her friend that she was not getting vaccinated because the vaccine was not FDA approved.  SUMF ¶59(c).

- On April 11, 2021, when texting with her mother-in-law about the vaccine, Plaintiff told her that she was "hesitant because of fertility issues."  SUMF ¶59(d).

- On April 15, 2021, Plaintiff texted her brother and sister-in-law why she was not getting the vaccine:

  > Long story short ***here's why***: 1) Don't know effects on fertility; 2) We don't know the long term side effects of the vaccine in general; 3) It's not FDA approved, just emergency use only; and 3) We are young enough and healthy (the chance of someone dying in our age group is 0.3% or less).[2]  SUMF ¶59(e).

- Plaintiff said this despite being comfortable talking to her brother and sister-in-law about her religion.  SUMF ¶59(e).

- On August 26, 2021, Plaintiff told a friend that she was not getting the vaccine because she didn't "want to be part of a clinical trial."  SUMF ¶59(f).

- On August 27, 2021, she texted her friend that she was not getting the vaccine because it was "too new."  SUMF ¶59(g).

---

[2] In this same text message chain, Plaintiff sent an article entitled "18 Reasons I Won't Be Getting a Covid Vaccine."  None of these reasons are religious in nature. SUMF ¶59(e).

- On October 21, 2021, Plaintiff submitted a Comment on a proposed FDA regulation:

> I think it's absolute insanity that the government wants to push an experimental shot on children where long term side effects are unknown; however, there have been tons of cases already where this shot resulted in myocarditis, blood clots, etc. Children have a 100% survival rate when it comes to Covid. Our 6 week old newborn got Covid and was absolutely fine! We will not be giving our children this shot **as the risk far outweighs the benefits** (if there even are any?!!).
>
> SUMF ¶59(h) (emphasis added).

- On November 15, 2021, Plaintiff texted a friend:

> I really just keep my mouth shut bc so many people i know are pro vaccine. Claiming how effective and safe it is … when NO ONE knows. & I'm tired of the fear the news tries to inject into people. Survival rate for COVID is over 99%. Doesn't add up to be pushing an experimental shot on people for that … especially on our kids! Don't get me started there.
>
> SUMF ¶59(i).

Quite obviously - none of these issues sound in any religious belief. Plaintiff does not want to get a COVID-19 vaccine for a lot of reasons, but they are not based on a religious belief.

Even if Plaintiff held religious beliefs against the COVID-19 vaccine, they were not sincerely held at the time Plaintiff submitted her Exemption Request to 3M. SUMF ¶¶43-58. When the COVID-19 vaccine was first introduced, Plaintiff

11

considered getting the vaccine. SUMF ¶70. In fact, as of December 23, 2020, Plaintiff's only reservation about the vaccine was its unknown impact on fertility. SUMF ¶82. Prior to the COVID-19 vaccine, Plaintiff never refused a vaccine because of her religion. SUMF ¶69. The church that Plaintiff regularly attends did not preach about the COVID-19 vaccine. SUMF ¶74. Moreover, Plaintiff testified that she began abstaining from "traditional" medicine and using more "holistic" or "natural" methods around June 2021, specifically in response to research she did about the COVID-19 vaccine. SUMF ¶¶85-86. The fact that Plaintiff's "religious" beliefs developed on their own in response to the COVID-19 vaccine contributes to the picture that Plaintiff is merely creating an "excuse for avoiding . . . unwanted legal obligations." *See Geerlings*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (quoting *Africa v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981)) (denying preliminary injunction to stop implementation of a masking requirement because the plaintiffs' religious objections were not found to be religious or sincere). *See also Kennedy v. PEI-Genesis*, 2025 WL 602159, at *1 (3d Cir. Feb. 25, 2025) (quoting Africa, 662 F.2d at 1035) ("Given [the plaintiff's] belated, inconsistent invocation of religion and his private message to his friend [discussing how the vaccine is unsafe and to 'forget about religion and all that'"], no reasonable juror could find his isolated moral objection to be part of a "comprehensive truth.")

12

In *Aukamp-Corcoran*, the plaintiff claimed she could not obtain a vaccine against the flu because of a Christianity-based objection to vaccination that "requires her to keep her body pure from everything that contaminates the body and spirit." 2022 WL 507479, at *3-6.  The court granted summary judgment concluding the Plaintiff did not hold a sincerely-held religious belief opposing vaccination. *Id.* at *6.  In so ruling, the court looked to the plaintiff's behavior that was inconsistent with her professed belief, including that the plaintiff had previously received vaccines, posted in a secular antivaccination Facebook group, repeated objections to the vaccine that did not have anything to do with religion, and developed these beliefs shortly before submitting her Exemption Request. *Id.* at *3-6.

Here, even more so than in *Aukamp-Corcoran*, Plaintiff's behavior undermines a sincerely held religious belief.  *See* SUMF ¶¶69 – 72.  Plaintiff's writings alone show that it was safety and health concerns – not a religious prohibition – that were making her consider not taking the vaccine.  *See* SUMF ¶¶59(a) – 59(i).  When combined with the questionable timing of when she claims she developed this belief, the fact that the belief only applies to the COVID-19 vaccine, and her behavior that is inconsistent with her professed belief,[3]

---

3 We also now know, through our forensic work, that Plaintiff had other people about whose religion she knew nothing give her the language for her Exemption Request.  For example, she sought assistance from a stranger named Nichole Hosein,

13

as in *Aukamp-Corcoran*, no reasonable jury could find that Plaintiff has a sincerely held religious belief that prevented her from taking the COVID-19 vaccine.

### 2.   Plaintiff Did Not Inform 3M of a Sincerely Held Religious Belief that Prevented Her from Getting the Vaccine (Element 2 of the Prima Facie Case)

Even assuming for the sake of argument that Plaintiff could show that she holds a sincerely held religious belief that conflicts with obtaining the COVID-19 vaccination, summary judgment should nevertheless be granted because the Exemption Request that Plaintiff submitted did not describe that alleged belief to 3M.

It is well established that an employee must give an employer "fair warning" that a particular employment practice will interfere with the employee's religious beliefs. *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 319 (3d Cir. 2008) (citing *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003)). It is fundamental that to assess if an employer should have granted an accommodation, Courts look at what the plaintiff submitted or communicated to the employer, not

---

to whom Plaintiff was referred by her holistic practitioner – not a religious leader. SUMF ¶¶60 - 66. Ms. Hosein wrote the first two paragraphs of Plaintiff's Exemption Request and provided Plaintiff with a booklet called "How to Write a Religious Exemption Request," from which Plaintiff copied and pasted in drafting her Exemption Request. SUMF ¶¶60-66. This booklet is in no way tailored to Christianity, going as far as to include passages from the Quran, and separating out the Old and New Testaments from the Bible to ensure that Jewish readers only pull from the Old Testament. SUMF ¶¶60–66.

14

what she presently claims. *See Blackwell*, 2023 WL 5807840, at *9 (finding the allegations plaintiff added in her amended complaint about her religious beliefs inapposite because she did not inform her employer about these beliefs at the time of her request); *Wilkerson*, 522 F.3d at 319 (finding the plaintiff did not inform her employer of the conflict with her religion until after the ceremony at issue, so there was no duty to accommodate).

Here, in her Exemption Request, Plaintiff failed to communicate a specific religious belief that conflicts with obtaining the COVID-19 vaccine. "A person's religion is not like [her] sex or race – something obvious at a glance." *Reed,* 330 F.3d at 935-36 (7th Cir. 2003). "[S]imply announcing one's belief in a certain religion, or even wearing a symbol of that religion (i.e., a cross or Star of David) does not notify the employer of the particular beliefs and observances that the employee holds in connection with her religious affiliation." *Wilkerson,* 522 F.3d at 319 (citing *Reed*, F.3d at 935-36). "We do not charge employers with possessing knowledge about the particularized beliefs and observances of various religious sects." *Id.* (citing *Reed*, F.3d at 936). Rather an employee must describe the particular belief or observance that the employee holds those conflicts with the requirement. *Id.*

Plaintiff's Exemption Request communicates personal convictions, cloaked in religious language, rather than a particular belief that conflicts with the COVID-

19 vaccine.  For instance, Plaintiff wrote that she had been "praying to God for guidance during these unprecedented times" and that "each medical decision is independent of one another and is dictated by the way the Holy Spirit moves on my own heart" And "God has given me clear direction to not relieve *this shot*." SUMF ¶¶49(a) - 49(h).  Clearly, Plaintiff did not want to receive the COVID-19 vaccine, as a personal conviction, and communicated this conviction with general religious language in an attempt to make these convictions seems "religious."  This is exactly the type of "blanket privilege" that does not qualify as a religious belief under the Third Circuit's well-established jurisprudence.  *See, e.g., Caruano,* 2024 WL 406438, at *6 (citing *Africa v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981)) (collecting cases) ("Allowing Plaintiff the ability to object to anything that "goes against God's will" would amount to the type of 'blanket privilege' that does not qualify as religious belief under *Africa"*); *Geerlings,* 2021 WL 4399672 at *1("Religious adherents often profess that faith inspires much of their secular lives, but those activities are still secular."); *Ulrich*, 2023 WL 2939585 at *5 (Plaintiff's "reliance upon a divine 'command ... to exercise bodily autonomy,' and assertion that 'God has given [her] liberty to live according to His calling', asserts … a 'blanket privilege' where she alone is the arbiter for decisions which she expects her employer to 'unfailingly respect.' The [Third Circuit] specifically rejected this 'self-defining approach' to religion."); *see also Rodrique v. Hearst Commc'ns, Inc.*, 2024

16

WL 733325, at *2 (D. Mass. Feb. 22, 2024) (granting employer's Motion for Summary Judgment because Plaintiff's exemption request reflected "a personal medical judgment about the necessity of COVID-19 vaccination rigged out with religious verbiage.")

Plaintiff's inconsistencies within her exemption request also support 3M's denial. An employer may deny a religious accommodation request if the employer has reason to believe the accommodation is not sought for religious reasons. *Aukamp-Corcoran*, 2022 WL 507479, at *4 (finding the timing and circumstances surrounding an employee's exemption request questionable, support the employer's denial of her exemption request). Plaintiff inconsistently wrote that she trusts in God to heal her from sickness, regardless of shots or medications, implying that she does not believe in medicine or vaccines. SUMF ¶49(d). However, Plaintiff indicated that she has received other vaccines. SUMF ¶49(d). When asked in a follow-up question as to why the COVID-19 vaccine is different from the other vaccines she had received, Plaintiff answered that "[e]ach medical decision is independent of one another and is dictated by the way the Holy Spirit moves on [her] heart." SUMF ¶49(d). This is further evidence that Plaintiff's Exemption Request is merely communicating Plaintiff's personal preference as it relates to the COVID-19 vaccine, rather than a religious belief.

17

In conclusion, regardless of what Plaintiff may have subjectively thought, she did not communicate to 3M a religious belief that was inconsistent with obtaining the vaccine. Her submission was inconsistent, conclusory, and only communicated Plaintiff's personal preference to not get the COVID-19 vaccine. Accordingly, 3M properly denied her exemption request and summary judgment here is appropriate. *See, e.g.*, *Blackwell*, 2022 WL 362392, at *8-9 (E.D. Pa. Jan. 23, 2023) (dismissing a failure to accommodate claim because the plaintiff failed to demonstrate she had a sincerely held religious belief that prevented her from getting the COVID-19 vaccine where the plaintiff merely pled that she was a member of United Church of Christ and that "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body."); *Ellison v. Innova Health Care Sys.*, No. 1:23-cv-00132 (MSN/LRV), 2023 WL 6038016, at *7 (E.D. Va. Sept. 14, 2023) (dismissing a plaintiff's failure to accommodate claim where she merely plead her religion opposed abortion and to vaccines developed or produced using materials from abortion, failing to sufficiently connect her objection to her religious beliefs); *Gardner-Alfred v. Federal Reserve Bank of New York*, No. 22-cv-1585, 2023 WL 6214863, at *12 (S.D.N.Y. Sept. 25, 2023) (granting summary judgment as to first plaintiff because the plaintiff's "opposition to the vaccine is based on a purported religion to which there is no evidence, other than her conclusory say-so, that she ever belonged, whose practices she never followed (with the exception of her opposition

18

to the vaccine)" and granting summary judgment as to second plaintiff because that plaintiff's "opposition is based on what she says is her reading of the Bible, without accompanying evidence that her religion subscribes to the beliefs underlying her objection or evidence that she herself subscribed to those beliefs either before or after she objected to the Vaccination Policy"); *Hussein*, 134 F. Supp. 2d at 596 (granting summary judgment because no reasonable jury could conclude an employee's beard was required by religious beliefs where he merely provided conclusory assertions that his religion required him to wear a beard).

### B. <u>Even if Plaintiff Held a Sincerely Held Religious Belief that She Communicated to 3M, 3M Properly Denied Her Exemption Request Because It Would be An Undue Hardship to Accommodate Her Objection to the COVID-19 Vaccine</u>

Even if Plaintiff could show she had a sincerely held religious belief, it would have been an undue hardship for 3M to accommodate her exemption request. If a plaintiff can establish the *prima facie* elements of her claim, the burden shifts to the employer to show either (1) it made a good-faith effort to reasonably accommodate the religious belief, or (2) such an accommodation would work an undue hardship upon the employer and its business. *Bushra,* 2024 WL 1219962, at *4 (citing *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) and *Groff v. DeJoy*, 600 U.S. 447, 468-73 (2023)).

An employer demonstrates an undue hardship "when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468

19

(2023).   An undue hardship can take both economic and non-economic forms. *E.E.O.C. v. GEO Group, Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) (quoting *Webb*, 562 F.3d at 260).   An employer need not grant a proposed accommodation that would cause or increase safety risks or the risk of legal liability for the employer.  *Aukamp-Corcoran*, 2022 WL 507479, at *6 (quoting *Robinson v. Children's Hosp. Boston*, No. 14-10263-DJC, 2016 WL 1337255 (D. Mass. Apr. 5, 2016)).   In the case of a contagious disease, each unvaccinated employee increases the risk of illness transmission to vulnerable patients.  *See Aukamp-Corcoran*, 2023 WL 507479, at *8.  Numerous courts have found that the health risks associated with employing unvaccinated employees rises to the level of an undue hardship.

In *Bushra v. Main Line Health, Inc.*, the plaintiff was an attending physician in the emergency room at a hospital.  No. 23-1090, 2023 WL 9005584, at *1 (E.D. Pa. Dec. 28, 2023).  The court found that without vaccine, the plaintiff was at a great risk of contracting and transmitting the disease because he had frequent and direct contact with patients and staff as a doctor in the emergency room.  *Id.* at *8.  The plaintiff also risked infecting and even causing the death not only of his colleagues and hospital staff, but also vulnerable patients.  *Id.*  Ultimately, the hospital would have been impaired in caring for patients with an unvaccinated doctor in its midst. *Id.*  Accordingly, the court found the substantial social costs in accommodating the plaintiff rose to the level of an undue hardship and granted summary judgment.  *Id.*

20

In *Aukamp-Corcoran*, the plaintiff was a nurse at a hospital, and the court found granting an exemption to the flu shot requirement would undermine patient and employee health efforts. 2022 WL 507479 at *6. The court explained:

> Granting Plaintiff's religious exemption request . . . even though such requests had already been granted, "could have put the health of vulnerable patients at risk," with the potential for increased hospitalization and death as result.

*Id.* at *7 (quoting *Robinson*, 2016 WL 1337255, at *10). While some employees were rightfully granted medical exemptions and allowed to wear a mask, "each unvaccinated employee permitted to wear a mask increased the risk of influenza transmission to vulnerable patients." *Id.* at *7. The court explained that it would have been more dangerous for the plaintiff to wear a mask than it would been if she were vaccinated. *Id.* at *8. Accordingly, the *Aukamp* court granted summary judgment, finding that granting an exemption request to the influenza vaccine would be an undue hardship on the employer. *Id.* at *7.

Simply put, the COVID-19 pandemic was the deadliest pandemic in U.S. history. SUMF ¶89. The information available to 3M in Fall 2021 and Spring 2022 was that the COVID-19 vaccines available in Spring 2022 were safe and proven to reduce disease acquisition and transmission. SUMF ¶96. Thus, unvaccinated persons were at an increased risk of contracting COVID-19 and transmitting it to others. SUMF ¶¶96, 105.

21

Here, the infectious disease concerns were much more significant because Plaintiff was exposed to patients and staff at not just one hospital, but at numerous hospitals throughout the Central Pennsylvania region, creating a safety risk all over the region.[4]  SUMF ¶110.  Plaintiff's job required her to spend multiple days a week visiting healthcare facilities, and occasionally in patient homes.  SUMF ¶¶3, 112. The patients Plaintiff was serving had serious injuries or who had undergone surgery, making it even more critical to protect them against the COVID-19 vaccine. SUMF ¶¶4, 112. Her job required her to interact with vulnerable patients and hospital staff daily.  SUMF ¶113.  In April 2022, the point in the pandemic when 3M mandated vaccinations for its customer-facing employees in the Health Care Business Group, there had been over 27 million new cases of COVID-19 in the first three and half months of 2022 due to the Omicron variant.  SUMF ¶90.  Vaccination was the most effective measure to ensure that Plaintiff did not spread COVID-19. SUMF ¶96.  Employees who worked in healthcare facilities were significantly more likely to become infected with COVID-19 than those in other occupations, meaning they were more likely to spread COVID-19 to the patients and staff with whom they interacted.  SUMF ¶95.  Accordingly, Plaintiff risked contracting and spreading

---

4 Importantly, when Plaintiff was asked on 3M's religious accommodation request form to provide any alternative accommodations that she believed would eliminate the conflict between her religious beliefs and the vaccine, Plaintiff did not answer. SUMF ¶49(h).

COVID-19 to each hospital she visited and every patient she interacted with, including at their homes.  SUMF ¶110.

As in *Bushra* and *Aukamp Corcoran*, accommodating Plaintiff's exemption from the vaccine would pose a significant health risk to the health and safety of employees and patients with whom Plaintiff interacted, thus causing 3M an undue hardship. *See Beickert v. N.Y. City Dept. of Ed.*, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) ("Kushner's unvaccinated presence would have imposed 'substantial increased costs in relation to the conduct of [the DOE's] particular business' by creating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment when COVID-19 vaccines had become available. Accordingly, this alone would have established an undue hardship on the DOE warranting dismissal of Kushner's claim.") (citations omitted); *Robinson*, 2016 WL 1337255, at *10 (granting summary judgment on a failure to accommodate claim where an administrative associate in a hospital's emergency department sought a religious accommodation to the influenza vaccine partly on the basis that it would be an undue hardship because the plaintiff worked with patients sitting near them as she worked on their admission to the hospital). *Lavelle-Hayden v. Legacy Health*, 2024 WL 3822712, at *15 (D. Or. Aug. 14, 2024) ("Based on the information and evidence available to it at the time, Defendant reasonably concluded that allowing unvaccinated employees to have direct, in-person contact with patients

23

and employees posed a substantial increased cost."); *Rolovich v. Washing State Univ.*, 2025 WL 48361, at *3 (E.D. Wash. Jan. 6, 2025), corrected, 2025 WL 48363 (E.D. Wash. Jan. 8, 2025) (granting Defendant's Motion for Summary Judgment on undue hardship defense because unrebutted expert testimony showed that Plaintiff's unvaccinated status materially increased the risk of spreading COVID-19 to others).

Moreover, when determining whether an employer would have suffered an undue hardship, courts take into account the aggregate effects of multiple employees seeking the same reasonable accommodation. *Lavelle-Hayden*, 2024 WL 3822712, at *10 (citing U.S. EQUAL EMP. OPPORTUNITY COMM'N, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws § L.3) (Mar. 1, 2022 update) ([T]he EEOC has issued guidance for COVID-19 reasonable accommodations instructing that "[a] relevant consideration is the number of employees who are seeking a similar accommodation, i.e. the cumulative cost or burden on the employer."). Within the Healthcare Business Group alone, 3M received 306 religious exemption requests. SUMF ¶108. 3M could not possible grant all these exemptions, as third-party vendors with customer-facing roles in healthcare facilities had a responsibility to limit religious exemptions to protect staff and patients. SUMF ¶109. The greater the number of exemptions granted, the higher the risk of COVID-19 infections and transmissions. SUMF ¶110.

24

In addition to the health and safety risks that Plaintiff's exemption request posed, allowing Plaintiff to remain unvaccinated would have posed an undue burden on the business. The effect on an employee's co-workers, including unequal treatment, is sufficient to support a finding of undue hardship. *See, e.g.*, *Groff*, 600 U.S. at 475-76 (Sotomayor, J., concurring) ("Because the 'conduct of [a] business' plainly includes the management and performance of the business's employees, undue hardship on the conduct of a business may include undue hardship on the business's employees . . . Indeed, for many businesses, labor is more important to the conduct of the business than any other factor."); *Lake v. HealthAlliance Hosp. Broadway Campus*, 2024 WL 3226273, at *9 (N.D.N.Y. June 27, 2024) (granting Defendant's motion for summary judgment on undue hardship defense in part because plaintiff, an unvaccinated X-Ray technician, would be required to be accompanied by another vaccinated X-Ray technician).

Here, if Plaintiff remained unvaccinated, the hospitals she serviced may not have allowed her to enter the facility without vaccination. SUMF ¶92. Given that Plaintiff worked in a sales role, if Plaintiff was not allowed to enter a particular healthcare facility, it would allow 3M's competitors, who had vaccinated employees, to gain a competitive advantage over 3M. SUMF ¶115.

Finally, Plaintiff could not be accommodated through masking, testing, or social distancing without causing additional undue burden. Plaintiff testified that

25

she is not willing to get a nasal swab COVID testing, which was one of the primary methods of COVID-19 testing.  SUMF ¶100. In any event, each of these three alternatives methods are less effective than vaccines at reducing the spread of COVID-19. SUMF ¶96. Moreover, because 3M is a third-party vendor and its employees work off site, there would be no feasible way for 3M to ensure compliance with masking and social distancing policies, and 3M would have to be entirely dependent on the hospital to ensure adherence the policies. SUMF ¶97. Even assuming the healthcare facility would agree to undertake this task, it would be additional burden on a hospital that is already dealing with a deadly global pandemic.  SUMF ¶98.  3M could in theory have a company-wide testing program, however it would be very burdensome due to the frequency of testing required. SUMF ¶99.

Plaintiff's job was to improve the health of those she served and successfully transition vulnerable patients' home with a V.A.C.® Therapy System.  Her accommodation request would have endangered the health and safety of the patients and healthcare staff, spread COVID-19, and endangered her personally.  This, combined with the burden her accommodation request would have placed on her co-workers and 3M's business are sufficient to show that 3M properly denied her exemption request.  Accordingly, as in the cases cited above, summary judgment should be granted for this reason as well.

## VI.  CONCLUSION

Plaintiff cannot establish a prima facie case for religious discrimination because she does not have a sincerely held religious belief that conflicts with the COVID-19 vaccine requirement for her position, Patient Support Specialist. Moreover, even if she does possess such a belief, she failed to communicate it to 3M.  Finally, accommodating Plaintiff's Exemption Request would have cause 3M an undue burden.  For these reasons, 3M urges this Court to grant summary judgment in its favor and dismiss Plaintiff's Complaint in its entirety.

Date: March 19, 2025                    Respectfully submitted,

/s/ Janice G. Dubler
Janice G. Dubler
Jennifer L. Pacicco
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800 (Phone)
(215) 995-2801 (Fax)
janice.dubler@ogletree.com
jennifer.pacicco@ogletree.com
*Attorneys for Defendant 3M Company*

27